**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| **NARDYNE JEFFERIES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 11-1159 (RCL)** |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

### I.     INTRODUCTION AND BACKGROUND

This case arises out of the tragic March 30, 2010 death of sixteen-year-old Brishell Tashé

Jones.  The "theft" of a five-dollar piece of costume jewelry set off a chain of senseless

retaliatory violence, eventually taking the lives of five teenagers.  After attending the funeral of

another young homicide victim, Ms. Jones congregated with a group of mourners on South

Capitol Street.   Orlando Carter and his crew—seeking revenge for an earlier assault—

indiscriminately fired into the crowd from a rented minivan.  Ms. Jones died from a gunshot

wound to the head.[1]

Plaintiff Nardyne Jefferies is the mother of Ms. Jones, and the personal representative

and executor of her estate.  She has sought to hold a wide array of government agencies and

private actors responsible for the death of her daughter.  Among those parties is Romanian

National Company ROMARM S.A. ("ROMARM"), which the Complaint alleges is "the

---

[1]    For a more detailed history of the events leading to Ms. Jones' death and the plaintiff's claims, see:  *Jefferies v. District of Columbia*, __ F. Supp. 2d __, 2013 WL 66085 at *1–*4 (D.D.C. Jan 7, 2013); Compl., June 23, 2011, ECF No. 1; Paul Duggan, *Steely determination, deadly retribution*, WASH. POST, June 4, 2010, at A1.

manufacturer and exporter of the AK-47 assault rifle used in the retaliatory drive-by murder of Brishell Jones." Compl. ¶ 30. The plaintiff alleges, "ROMARM had a duty to act, and either negligently or intentionally failed to act, or acted in a manner that created and/or increased the danger that put Brishell Jones directly in harm's way on March 30, 2010." *Id.*

The law is very clear:  The Protection of Lawful Commerce in Arms Act ("PLCAA") explicitly bars this kind of suit.  15 U.S.C.A. §§ 7901–03 (West 2013).  This Act prohibits suits against firearms manufacturers and dealers for injuries "resulting from the criminal or unlawful misuse of" a firearm "by the person or a third party."  *Id.* § 7903.  Since the controlling law unambiguously bars plaintiff's claims against ROMARM, a *sua sponte* dismissal is appropriate. The Court will dismiss all plaintiff's claims against ROMARM with prejudice.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Under Rule 12(b)(6), a court may dismiss a cause of action or case for failing to state a claim upon which relief may be granted.

Typically, a court considers whether to dismiss a claim after the defendant files a motion to dismiss.  "Complaints may also be dismissed, *sua sponte* if need be, under Rule 12(b)(6) whenever 'the plaintiff cannot possibly win relief.'"  *Best v. Kelly*, 39 F.3d 328, 331 (D.C. Cir. 1994) (quoting *Baker v. Director, United States Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir. 1990)). [2]  In this District, "Courts may dismiss the action *sua sponte* under Rule 12(b)(6) as

---

[2]     The D.C. Circuit distinguishes between *sua sponte* dismissals under Rule 12(b)(1)—dismissals for lack of jurisdiction—from *sua sponte* dismissals under Rule 12(b)(6)—dismissals for failure to state a claim. *Best v. Kelly*,

'[n]either the Federal Rules of Civil Procedure nor any federal statute expressly prohibits *sua sponte* dismissals for failure to state a claim' nor does any decision of the Supreme Court." *Maynard v. District of Columbia*, 579 F. Supp. 2d 137, 142 (D.D.C. 2008) (quoting *Baker*, 916 F.2d at 725, 726 & n.2).

The court may dismiss a claim with prejudice when amending the complaint would be futile. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (dismissal with prejudice appropriate when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency") (internal quotation marks omitted) (emphasis omitted); *Carty v. Author Solutions, Inc.*, 789 F. Supp. 2d 131, 135–36 (D.D.C. 2011) (dismissal with prejudice appropriate when permitting amendment would be futile because "amended complaint would suffer from the same flaw as the original complaint").

## III.    DISCUSSION

It is clear that no "set of facts consistent with the allegations," *Twombly*, 550 U.S. at 563, could entitle plaintiff to any relief from ROMARM.  The Complaint alleges that Ms. Jones' killers used a ROMARM-manufactured assault rifle during the drive by.  Compl. ¶¶ 16, 47.  The Complaint alleges that Ms. Jones' death was the direct and/or indirect result of the "negligence and/or incompetence by private gun manufacturer(s) (including ROMARM)."  *Id*. ¶ 62.  It alleges that "ROMARM had a duty to act, and either negligently or intentionally failed to act, or acted in a manner that created and/or increased the danger that put Brishell Jones directly in harm's way on March 30, 2010."  *Id*. ¶ 30.

---

39 F.3d at 330–31.  The district court may only enter a *sua sponte* dismissal under Rule 12(b)(1) if the claims are "patently insubstantial" or "essentially fictitious."  *Id*. at 330 (internal quotation marks omitted).  However, the district court may enter a *sua sponte* 12(b)(6) dismissal for failure to state a claim when the "plaintiff cannot possibly win relief" or the complaint is "legally frivolous."  *Id*. at 331 (internal quotation marks omitted).

Prior to the passage of the federal Protection of Lawful Commerce in Arms Act, the District of Columbia had passed the Assault Weapons Manufacturing Strict Liability Act ("SLA").  D.C. CODE ¶¶ 7-2551 (2001).  The SLA provided that:

> Any manufacturer, importer, or dealer of an assault weapon or machine gun shall be held strictly liable in tort, without regard to fault or proof of defect, for all direct and consequential damages that arise from bodily injury or death if the bodily injury or death proximately results from the discharge of the assault weapon or machine gun in the District of Columbia.

*Id*. § 7-2551.02.  The SLA could have authorized an action against ROMARM.  However, in 2006 Congress passed the PLCAA, which stated that firearms manufacturers, distributors, marketers and dealers "should not[] be liable for the harm caused by those who criminally or unlawfully misuse firearm products."  15 U.S.C.A. § 7901(a)(5).  The purpose of the PLCAA is to "prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products…for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended."  *Id*. § 7901(b)(1).

Specifically, the PLCAA states, "A qualified civil liability action may not be brought in any Federal or State court" and "[a] qualified civil liability action that is pending on October 26, 2005, shall be immediately dismissed by the court in which the action was brought or is currently pending."  *Id*. § 7902.  The statute defines "qualified civil liability action" as "a civil action…brought by any person against a manufacturer or seller of [a firearm][3]…for damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of [a firearm] by the person or a third party."  *Id*. § 7903(6)(A).  The PLCAA makes exceptions, *inter alia*, for negligent entrustment, breach of

---

[3]  The PLCAA also prohibits suits against the manufacturers of firearm components and ammunition.  *See* 15 U.S.C.A. § 7903(4).  The Complaint alleges that ROMARM made the firearm, not the ammunition.  Compl. ¶ 30.

contract or warranty, and damages resulting directly from a defect or design or manufacture of the product (except where discharge of the product was caused by a volitional act that constituted a criminal offense). *Id*. §§ 7903(5)(A)(i)–(vi).

The District of Columbia Court of Appeals and the United States District Court for the District of Columbia have considered the effect and constitutionality of the PLCAA, as it relates to the SLA. The District of Columbia Court of Appeals held that SLA suits against assault weapon manufacturers do not fall under any exception to the PLCAA. *District of Columbia v. Beretta U.S.A. Corp.* (*Beretta V*), 940 A.2d 163, 170–71 (D.C. 2008), *cert. denied* 129 S. Ct. 1579 (2009). The Court held that the PLCAA barred suit against a gun manufacturer for injuries caused by the private, criminal use of its guns. *Id*. The United States District Court for the District of Columbia held that it was "bound by the D.C. Court of Appeals' interpretation of the SLA" in *Beretta V*, and agreed that the SLA does not create any exception to the PLCAA. *Estate of Charlot v. Bushmaster Firearms, Inc.*, 628 F. Supp. 2d 174, 181 (D.D.C. 2009). The Court then held that the PLCAA "preempts and displaces conflicting state law." *Id*. at 184. The Court also upheld the constitutionality of the PLCAA against separation of powers challenges:

> The Court rejects plaintiffs' argument that the PLCAA imposes an impermissible rule of decision upon the courts….[T]he PLCAA does not directly interfere with judicial fact-finding. The PLCAA identifies particular types of claims that are not permissible and leaves it to the courts to apply those standards in the cases before them. The statute permits the courts to determine whether the cases before them…are covered by the PLCAA.

*Id*. at 184 (internal citations omitted).

The PLCAA unequivocally bars plaintiff's claims against ROMARM. Plaintiff claims that Ms. Jones' killers used a ROMARM-manufactured assault rifle in the fatal shooting. Compl. ¶ 47. Plaintiff makes a blanket assertion that ROMARM's negligence directly and/or indirectly contributed to Ms. Jones' death, and that ROMARM owed a duty of care to Ms. Jones.

5

Compl. ¶¶ 30, 62.   However, no plausible reading of the facts could state a claim against ROMARM.   It is uncontroverted that a third party discharged the assault rifle, during the commission of a criminal act.   *See* Compl. ¶¶ 40–49; *see also* Keith L. Alexander, Theresa Vargas & Paul Duggan, *D.C. jury convicts 5 of murder in attacks*, WASH. POST, May 8, 2012, at A14 (Ms. Jones' killers convicted of murder).   The PLCAA explicitly and clearly prohibits this kind of suit.   It is settled law that the SLA does not create any exception to the PLCAA, and this Court is bound to accept the District of Columbia Court of Appeals' interpretation of the SLA. *See Beretta V*, 940 A.2d 170–71; *Charlot*, 628 F. Supp. 2d at 181.   The suit commenced after the effective date of the PLCAA; in any event, the PLCAA retroactively applies to all actions then pending.   *See* Compl.; 15 U.S.C.A. § 7902(b).

The Court cannot construe the allegations—or draw any plausible inferences from the allegations—in a way that would put this case under any of the exceptions of the PLCAA.   *See* 15 U.S.C.A. §§ 7903(5)(A)(i)–(vi) (list of exceptions).   The only exception that comes close is the one that allows "an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner."   *Id*. § 7903(A)(v).   However, this exception does not apply "where the discharge of the product was caused by a volitional act that constituted a criminal offense."   *Id*. None of the exceptions to the PLCAA can plausibly apply in this case.

The Court finds that the law here is so clear that it is appropriate to dismiss the claims against ROMARM *sua sponte*, and with prejudice.   Plaintiff originally filed this action in the Superior Court of the District of Columbia.   *See* Compl.   Upon motion by the District of Columbia, this Court removed the action to the United States District Court or the District of Columbia.   *See* Notice of Removal of Action, June 23, 2011, ECF No. 1.   It is unclear from the

file transferred from Superior Court whether plaintiff effectively served process on ROMARM. *See* Receipt of Original File, June 24, 2011, ECF No. 3.  However—in the interests of judicial economy and justice—the Court resolves the issues on the merits, since it is plain from the Complaint that plaintiff cannot maintain a cause of action against ROMARM.  In this case, "it is 'patently obvious' that the plaintiff cannot prevail on the facts alleged in the complaint." *Perry v. Discover Bank*, 514 F. Supp. 2d 94, 95 (D.D.C. 2007) (quoting *Baker*, 916 F.2d at 726–27). Allowing plaintiff to amend the Complaint or submit proof of service would be futile when the established law plainly prohibits this kind of suit.  *See*, *e.g.*, *Carty*, 789 F. Supp. 2d at 135–36 (dismissal with prejudice appropriate when amended complaint would suffer from same defects).

The Court also finds that *sua sponte* dismissal is in line with the purposes of the PLCAA. Congress took a hard line against civil suits against gun manufacturers, stating:

> The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system, erodes public confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil liberty….  The possible sustaining of these actions by a maverick judicial officer or petit jury would expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States.  Such an expansion of liability would constitute a deprivation of the rights, privileges, and immunities guaranteed to a citizen of the United States under the Fourteenth Amendment to the United States Constitution….  [Such liability actions] attempt to use the judicial branch to circumvent the Legislative branch of government to regulate interstate and foreign commerce through judgments and judicial decrees thereby threatening the Separation of Powers doctrine and weakening and undermining important principles of federalism, State sovereignty and comity between the sister States.

15 U.S.C.A. §§ 7901(a)(6)–(8).  The Congress intended to "prevent the use of such lawsuits to impose unreasonable burdens on interstate and foreign commerce."  *Id.* § 7901(b)(4).  Congress was not only concerned about the effect of civil liability on gun manufacturers, but also the improper use of the judiciary to circumvent legislative judgments.  This suggests that when it is clear that the PLCAA bars an action, *sua sponte* dismissal may be appropriate to promote

judicial integrity and separation of powers interests.   Furthermore, the PLCAA ordered the immediate dismissal of any action pending as of the effective date of the Act.   *Id*. § 7902(b). This suggests that Congress intended courts to weed out, expeditiously, claims the PLCAA bars.

## IV.   CONCLUSION AND ORDER

Plaintiff wants to sue ROMARM because it manufactured the assault rifle used in her daughter's murder.   Congress, through the Protection of Lawful Commerce in Arms Act, has explicitly and unequivocally prohibited this kind of suit.   The Court finds that under no "set of facts consistent with the complaint," *Twombly,* 550 U.S. at 563, can the plaintiff "possibly win relief," *Baker*, 916 F.2d at 726.   Therefore, it finds that a *sua sponte* dismissal of all claims against ROMARM is appropriate.

After consideration of the Complaint, all documents incorporated therein, the entire record, and the applicable law, the Court hereby

ORDERS that all plaintiff's claims against Romanian National Company ROMARM S.A. are DISMISSED WITH PREJUDICE; it further

ORDERS that all plaintiff's claims against ROMARM General Manager Vasile Marius Crisan, whether in his individual or official capacity, are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Signed by Royce C. Lamberth, Chief Judge, on January 8, 2013.